UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 12-97-DLB

AMANDA R. BROCK                                                                          PLAINTIFF


vs.                             <u>MEMORANDUM OPINION & ORDER</u>


MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION                                              DEFENDANT

***************************

Plaintiff brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Amanda Brock filed an application for supplemental security income on November 13, 2008, alleging disability as of January 1, 2007. (Tr. 122). She claims disability due to bipolar disorder, scoliosis, chronic back pain, anxiety disorder, emphysema, bone spurs in her neck, head injuries with memory loss, and depression. Her application was denied initially and upon reconsideration. (Tr. 70, 77). At Plaintiff's request, an administrative hearing was conducted on April 29, 2010 by Administrative Law Judge Donald A Rising. (Tr. 40-61). On June 4, 2010, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to supplemental security income. (Tr. 26-39). This

1

decision became the final decision of the Commissioner when the Appeals Council denied review on March 20, 2012. (Tr. 1-7).

On May 21, 2012, Plaintiff filed the instant action. The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 11, 12).

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Cutlip*, 25 F.3d at 286. Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). However, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

At Step 1, the ALJ found that there was no evidence that Plaintiff had engaged in substantial gainful activity since the application date. (Tr. 31). At Step 2, the ALJ found Plaintiff's "anxiety and disorders of the back" to be severe impairments within the meaning of the regulations. (*Id.*).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*) In doing so, the ALJ found that Plaintiff's mental impairments do not meet or equal the requirements of Listings 12.04 (affective disorders) or 12.06 (anxiety-related disorders) because they do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration. (Tr. 31-32).

3

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work involving occasional stooping and crouching.[1] (Tr. 32). The ALJ then set forth the following restrictions:

> The claimant should not perform work involving ropes, ladders, or stairs. She should avoid work around vibrations, hazards, heights or climbing ropes/ladders/scaffolds. The claimant is capable of simple tasks/instructions with occasional public contact and little independent judgment or minimal variation in routine.

(Tr. 32).

As Plaintiff had no past relevant work to which she could return, the ALJ continued to the final step of the sequential evaluation. (Tr. 34). At Step 5, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (Tr. 35). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could work as a inspector/tester (2,000 in Kentucky/98,000 nationally) or as a hand packager (4,300 in Kentucky/315,000 nationally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that she was not under a "disability," as defined by the Social

---

[1] The term "light work" is defined in 20 C.F.R. § 416.967(b), to wit:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

4

Security Act. (*Id.*).

**C.     Analysis**

Plaintiff advances three arguments on appeal. First, Plaintiff argues that the ALJ erred in commenting on Plaintiff's failure to seek medical treatment by ignoring her inability to pay for such treatment due to lack of insurance. Second, Plaintiff contends that the ALJ should have ordered a consultative physical examination in light of her inability to obtain appropriate treatment rather than questioning her credibility regarding the extent of her symptoms. Third, Plaintiff argues that the ALJ erred when he discounted the physical function opinion statement from her treating physician, Dr. Jeremy Jackson. Each of these arguments will be addressed in turn.

**1.     The ALJ did not err in commenting on Plaintiff's failure to seek treatment**

In concluding that Plaintiff could perform light work, the ALJ found that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (Tr. 33). Plaintiff now complains because, in reaching that conclusion, the ALJ noted that Plaintiff "had not undergone physical therapy, surgical intervention, nor is claimant under the care of a psychiatrist or mental health professional for depression/anxiety," and that she "has undergone no physical therapy nor surgical intervention." (Tr. 33-34). In support of this contention, she points to Social Security Ruling 96-7p, which reads, in pertinent part:

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical

> treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

1996 WL 374186, at *7 (July 2, 1996).

The Commissioner responds that Plaintiff's argument fails because the ALJ did not base his credibility determination solely on her failure to follow or obtain treatment. According to the Commissioner, the ALJ not only made the comments complained-of by Plaintiff, but also considered the medical evidence, her daily activities, and her smoking habits as reasons for his credibility determination. Essentially, the Commissioner is arguing that, even if the rationale with respect to Plaintiff's failure to seek treatment ran afoul of Social Security Ruling 96-7p, the ALJ's credibility determination must not be disturbed if the additional considerations are otherwise supported by substantial evidence.

The Commissioner's characterization of this issue is correct. As the Sixth Circuit explained in *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997):

> The regulations indicate that if disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken. In so doing, the Commissioner has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record. The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis.

(citations omitted); *see also Felisky v. Bowen*, 35 F.3d 1027, 1040 (6th Cir. 1994) ("None of these factors supports the ALJ's decision to discount Felisky's credibility."). This Court, then, will consider the other reasons set forth by the ALJ.

### a.   Medical Evidence

The ALJ considered an X-ray, an MRI, and a CT-scan, as well other medical

6

records. (Tr. 33-34). In doing so, he correctly pointed out that the X-ray and the MRI were normal, while the CT-scan indicated only a small C5 osteophyte (bone spur). (Tr. 34, 250, 423-424). As to the remaining medical records, the ALJ noted, among other things, that the reports from Plaintiff's treating physician, Dr. Jeremy Jackson, revealed "no clubbing, cyanosis, or edema," and documented that Plaintiff "was in no acute physical distress with normal muscle strength." (Tr. 33, 314-318, 373-375).

      **b.**      **Daily Activities**

The ALJ further noted that Plaintiff "reported that she could drive, dress herself, and grocery shop," which derived from the following testimony at the administrative hearing:

> Q: Are you capable at home of self-care activities like bathing and dressing?
>
> A: Yeah I dress myself but as far as a shower, I have a hard time with my hair because I can't tilt my head, my neck back so far out I do the best I can.
>
> . . . .
>
> Q: Do you drive a car?
>
> A: I can drive; I don't drive a lot since the accident.
>
> Q: What about outdoor errands like going to the grocery store or Wal-Mart and stuff? Do you go by yourself or does anybody go with you?
>
> A: My boyfriend usually goes. I don't like to, I don't like to go, I just get real nervous around a lot of people. Sometimes I go except somebody goes with me straight in and straight out, I don't –

(Tr. 33, 48, 50). The ALJ then commented that her activities "include gardening or lawn mowing for three hours," which was based on emergency room records from May 2009, less than one year before the hearing date. (Tr. 34, 325).

      **c.**      **Smoking and Emphysema**

Finally, the ALJ commented that Plaintiff continues to smoke even though "she

testified she suffered from emphysema." (Tr. 34). This observation is supported by Plaintiff's testimony. (Tr. 48).

These justifications are reasonable and supported by substantial evidence. However, before definitively rejecting this argument, Plaintiff's second contention as to a consultative examination must be also considered.

### 2. The ALJ did not err in declining to order a physical consultative examination

Intertwined with Plaintiff's complaint regarding the ALJ's commentary is her argument that the ALJ should have ordered a consultative physical examination (rather than questioning her credibility).[2] However, an ALJ is not required to act as a claimant's counsel or produce evidence on her behalf, especially when, as here, the claimant is represented by counsel. *See Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1172 (6th Cir. 1990) (recognizing that an ALJ's obligation is simply to develop a full and fair record unless the case involves an unrepresented claimant unfamiliar with the hearing procedures). Moreover, "the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. § 416.917(a)).[3]

---

[2]Plaintiff was referred to a consultative psychologist to assess her mental impairment. (Tr. 334-344).

[3]20 C.F.R. § 416.917 provides that, "[i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests." (emphasis added).

In this case, the ALJ fully developed the facts necessary to deny benefits to Plaintiff. *Landsaw*, 803 F.2d at 214 (citing *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). The Court is particularly unsympathetic to Plaintiff's argument considering that she has not indicated that she requested a physical consultative examination,[4] and because Plaintiff was represented by counsel.

In sum, the Court rejects Plaintiff's contentions that the ALJ erred by commenting on Plaintiff's failure to seek medical treatment and by declining to order a consultative physical examination

### 3. Plaintiff's argument with respect to the physical function opinion statement from her treating physician is without merit

As noted, Dr. Jeremy Jackson was Plaintiff's treating physician. According to Plaintiff, the ALJ failed to give appropriate weight to the doctor's physical function opinion. The Commissioner responds that acceptance of that opinion would not change the administrative result.[5]

Dr. Jackson completed a medical assessment of Plaintiff's ability to do physical, work-related activities on April 27, 2010. (Tr. 487-489). In that assessment, Dr. Jackson opined that Plaintiff had limitations due to chronic neck and back pain. (Tr. 487-488). Specifically, he opined that she could lift fifteen pounds occasionally and five pounds frequently, walk two hours in an eight hour workday (including one hour without interruption), and occasionally balance, stoop, crouch, and kneel, but she could never climb

---

[4] The Commissioner asserts that Plaintiff did not make such a request.

[5] The Commissioner also argues that the ALJ properly evaluated the opinion. This contention, though, need not be addressed because the Court generally agrees with the Commissioner's primary position.

or crawl. (*Id.*). The doctor also noted physical function and environmental restrictions, including reaching, pushing, pulling, moving machinery, and exposure to chemicals, dust, and fumes, but he did not quantify these restrictions. (Tr. 188). Finally, Dr. Jackson opined that Plaintiff's ability to sit was not affected by her impairments. (*Id.*).

At the administrative hearing, the VE not only testified that a hypothetical individual with Plaintiff's vocational profile and RFC to perform light work could perform several jobs, but also considered an alternative hypothetical incorporating Dr. Jackson's limitations. (Tr. 58-59). Assuming a sedentary level of exertion,[6] along with non-exertional restrictions to simple tasks and occasional public contact, the VE testified that such an individual could work as a packer (300 in Kentucky/22,000 nationally), production worker (800 in Kentucky/40,000 nationally), inspector (250 in Kentucky/13,000 nationally), or as a material mover (800 in Kentucky/47,000 nationally). (Tr. 59). The VE further testified that this was not an exhaustive list, but merely a representative sample of jobs the hypothetical individual could perform. (*Id.*).

Plaintiff's argument fails in light of the VE's testimony. While it would be presumptuous to conclude that the ALJ would not have reached a different result had he accepted Dr. Jackson's opinion, it is well recognized that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a

---

[6]The term "sedentary work" is defined in 20 C.F.R. § 416.967(a), to wit:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

10

'hypothetical' question." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). Because the VE testified that there would be jobs available notwithstanding Dr. Jackson's additional limitations, there is substantial evidence to support the ALJ's ultimate determination–that Plaintiff is capable of making a successful adjustment to other work and is thus not under a "disability."

### III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence. Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 12) is hereby **GRANTED**;

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 13th day of March 2013.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\6-12-97 Brock MOO.wpd